[No. A121623. First Dist., Div. Three. Sept. 15, 2009.]

SARA CHO et al., Plaintiffs and Respondents, v.
SEAGATE TECHNOLOGY HOLDINGS, INC., Defendant and Respondent;
DAVID KLAUSNER, Objector and Appellant.

COUNSEL

Charles D. Chalmers for Objector and Appellant.

Strange & Carpenter, Brian R. Strange, Gretchen Carpenter; Gutride & Safier, Adam J. Gutride and Seth A. Safier for Plaintiffs and Respondents.

Sheppard Mullin Richter & Hampton, Peter S. Hecker, Neil A.F. Popovic and Dylan Ballard for Defendant and Respondent.

OPINION

SIGGINS, J.—Plaintiff Sara Cho filed a representative class action against Seagate Technology Holdings, Inc. (Seagate), for falsely overstating in advertising and packaging the storage capacity of computer disc drives that it manufactures for public sale. The case was settled and David Klausner objected to the settlement. Klausner argued the class definition was imprecise and misleading, and that there was the possibility of collusion between the parties affecting settlement negotiations. In particular, Klausner claimed that collusion was evident because once the parties learned of Klausner's objections, they modified their positions on the scope of class membership without changing the class definition. The trial court overruled Klausner's objections and approved the settlement. We conclude that Klausner has not shown the trial court abused its discretion in approving the settlement, and that there are no facts that show the parties engaged in any collusion or improper conduct.

But we remand to require notice to the class that accurately reflects class membership as agreed upon by the parties, and intended by the court to be included within the settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

Cho filed her complaint in Los Angeles County Superior Court in August 2005 alleging that defendant Seagate overstated the storage capacity of its computer hard drives in advertising and product labeling by approximately 7 percent. Cho's amended complaint alleged that the principal reason for the overstatement was that Seagate used a decimal definition of "gigabyte" (equal to one billion bytes) which differed from the binary definition (equal to approximately 1.073 billion bytes) that was used by computer operating systems. Cho asserted claims for unfair business practices, false advertising, and violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.).[1] After this case was transferred to the San Francisco Superior Court, Seagate denied Cho's allegations and asserted a number of affirmative defenses. The parties engaged in considerable discovery and filed various motions, including motions for summary judgment. While Cho's motion seeking class certification was pending, the parties engaged in two and a half days of mediation before the Honorable Edward Infante (Ret.). The parties reached a settlement agreement that was preliminarily approved by the trial court in September 2007. Shortly thereafter, the court certified a plaintiff settlement class.

The agreement defined the settlement class to include "all persons and entities who purchased in the United States a Retail Hard Drive between March 22, 2001 and the date of Preliminary Approval." A "retail hard drive" was defined as "a new Seagate brand hard disc drive that was purchased from an authorized Seagate retailer or distributor, separately as a Seagate product, that was not pre-installed into and sold bundled with a personal computer or other electronic device."[2] Seagate estimated there were more than six million qualifying purchases during the relevant period.

As consideration for the settlement, Seagate agreed to more precisely disclose the capacity of its hard drives on its packaging and Web site. Seagate also agreed to certain individual benefits for settlement class members. For

---

[1] Similar allegations were made in a March 2005 complaint filed in the San Francisco Superior Court by Michael Lazar against Seagate. The trial court granted summary judgment against Lazar in October 2006, and his appeal from the ensuing judgment is stayed in this court pending the disposition of this appeal.

[2] In response to the trial judge's concerns, the parties modified the notice to eliminate the separate definition of "retail hard drive." The term "authorized Seagate retailer or distributor" was not independently defined.

disc drives purchased before January 1, 2006, class members could choose either a cash payment equal to 5 percent of the net purchase price, or the Seagate Software Suite (the Software) that would allow users to perform enhanced computer and disc management functions. The estimated average cash benefit payable per hard drive was $7, and the Software had an estimated retail value of approximately $40. For disc drives purchased after January 1, 2006, when the packaging included more precise disclosures added by Seagate, class members were entitled to receive the Software.[3] To receive benefits, class members were required to submit a claim form that would be reviewed by a claims administrator. The claim form required the model name and number, amount paid, date of purchase, and name of the merchant. To obtain cash payment, the claim form also required either documentary proof of purchase or the serial number of the hard drive. Counsel for the parties were to be informed of any rejected claims, which, if unresolved, could be presented to the court for review. Seagate also agreed not to challenge an application for attorney fees of up to $1.75 million, costs of up to $35,500, and an incentive fee of $5,000 for Cho.

Notice of the settlement was to be provided through the establishment of a settlement Web site, a hyperlink at the bottom of the home page on Seagate's Web site, an e-mail notice sent to identified class members, and publication of the notice of settlement once a week for four consecutive weeks in USA Today. Each of the forms of notice advised readers they were "a member of the settlement class if, between March 22, 2001 and September 26, 2007, you purchased in the United States a new Seagate brand hard disc drive from an authorized Seagate retailer or distributor, separately as a Seagate product that was not pre-installed into and bundled with a personal computer or other electronic device." Publication was made in USA Today. The e-mail notices were sent to approximately 650,000 class members. Seagate posted the hyperlink on its Web site, and the settlement Web site was established and received hits from more than 113,000 uniquely identifiable visitors.

Klausner was the only person who formally objected to the settlement.[4] Klausner argued the notices of settlement were insufficient and inconsistent with the agreement. He claimed it was not possible to determine "whether someone who purchased a Seagate Hard Drive ('Drive') from a retailer that is not a Seagate authorized retailer, but that retailer purchased the Drive from an authorized distributor, is a class member under the settlement agreement."

---

[3] In July 2005, Seagate changed the statements on its packaging, marketing materials, and Web site to include the following language: "One gigabyte, or GB, equals one billion bytes when referring to hard drive capacity. Accessible capacity may vary depending on operating environment and formatting."

[4] Four other class members submitted letters regarding the settlement (three of which were actually critical of Cho's underlying claims). They were considered and rejected by the trial court.

Klausner said that only one of the 10 drives he purchased came from an authorized retailer listed on Seagate's Web site.[5] The parties initially responded that those who did not purchase their drives directly from an authorized retailer or distributor, as listed on Seagate's Web site, were not part of the settlement class.

In papers supporting his objections, Klausner argued, inter alia, that the definition of the settlement class provided in the notices, and as construed by the parties, was unduly restrictive. The scope of the plaintiff class described in the complaint had been abandoned, and those who bought their disc drives from independent retailers were unfairly excluded from the class. In response to this argument, Seagate adopted the position that: "The settlement includes anyone who purchased a Retail Hard Drive in the authorized retail distribution channel, *regardless of whether the retailer in the transaction is listed on Seagate's Web site*." Cho also acknowledged that she was wrong when she said in her previous brief that authorized retailers and distributors were limited to those listed on Seagate's Web site. Cho agreed with Seagate that "the words 'authorized retailer or distributor' in the settlement agreement—which are not defined terms—are meant to include drives purchased either directly *or indirectly* from the Authorized Retailers or Authorized Distributors listed on the [Web site], meaning that they include retailers who are not themselves listed on the [Web site], but who purchased from one of the entities that are listed on the [Web site]. The only excluded resellers are those whose drive sales are of fake, grey market, used, or stolen drives." With the court's permission Klausner filed additional objections that challenged the parties' changed interpretation of the defined class and suggested that the parties tried to mislead the court. He argued that plaintiff's counsel did not know who the "authorized retailers" were, and were engaged in "a sham sell-out of the class."

Counsel for the parties addressed Klausner's supplemental objections at the final approval hearing. Cho's counsel explained that "when Seagate drafted the settlement agreement and they used the term 'authorized retailers' and 'authorized distributors,' the thought all along was to include all those people that bought a retail hard drive. [¶] And you know, we didn't get into the exact procedures by which they distributed, but our concern was to represent those people that bought the hard drives as end users. So, nobody raised this issue. It wasn't a concern for any of the class members. No one called us and sa[id], what does that mean, we are confused. [¶] . . . The authorized retailers are everybody that makes a claim except for the gray market, you know, the used ones, the stolen ones and the fake ones." Counsel further stated "our intention

---

[5] Klausner also challenged the value of the benefits provided to class members, and argued no presumption of fairness should apply to the settlement.

all along is consistent with what we're saying today, it's consistent to how we negotiated the settlement, which is the retail hard drives."

Seagate's counsel observed that "there seems to have been no trouble with anybody figuring if they were in the class," and suggested potential class members could obtain assistance, if necessary, by calling plaintiff's counsel, the settlement administrator, or Seagate, or by consulting Seagate's Web site. Defense counsel also said that a substantial percentage of claims named merchants not listed as authorized retailers on Seagate's Web site, and argued "the notice is clearly adequate, under the due process standards, to let people know they are in this case and that they are eligible to make a claim."

The trial court overruled Klausner's objections. The order approving settlement states: "Mr. Klausner's objection to the term authorized retailers or distributors, the limitation of claims to purchases from authorized retailers or distributors, and his related claims that the class is impermissibly narrowed, that plaintiff's counsel have not adequately represented the class and the plaintiff is an inadequate class representative are overruled. The court finds that it is appropriate to limit the class to purchasers from authorized retailers or distributors. . . . The Court received no information that any class member, other than Mr. Klausner, was confused by the term authorized retailer or distributor. In that regard, neither the Agreement nor the form of notice caused any prejudice to the Plaintiff Settlement Class."[6] Klausner was granted leave to file his additional objections, which were overruled, but his request to undertake discovery was denied.[7]

The court's order approving settlement also defined the settlement class: "The Plaintiff Settlement Class consists of 'all persons and entities who, between March 22, 2001 and September 26, 2007 purchased in the United States a new Seagate brand hard disc drive from an authorized Seagate retailer or distributor, separately as a Seagate product that was not pre-installed into and bundled with a personal computer or other electronic device.' [¶] The Plaintiff Settlement Class includes persons or entities who purchased a Seagate retail hard disc drive from an authorized retailer or distributor, regardless of whether the retailer or distributor is listed on Seagate's [Web site]. . . . [¶] Limiting the Plaintiff Settlement Class to those who purchased from an authorized retailer or distributor excludes those who

---

[6] The court also rejected Klausner's contentions "that because of the perceived confusion that plaintiff's counsel are incompetent or haven't paid sufficient attention to the matter, and plaintiff is not an adequate representative [of] the class."

[7] During the final approval hearing, Klausner sought to file a discovery motion on the grounds that "the development of the issue around authorized retailers shows serious infirmity in the process of negotiation of this settlement, an apparent, or likely, or possible dereliction by the plaintiff's counsel."

purchased outside Seagate's authorized retail channels. That limitation is narrowly tailored to the facts and circumstances of this case; and it is rationally based on legitimate considerations, including that drives purchased outside authorized retail channels may be gray market devices sold or distributed with unknown representations, unknown or modified packaging, or statements not made by Seagate."

The court determined the parties' agreement and settlement were "fair, reasonable and adequate . . . ." The court also found the settlement provided valuable benefits to the class (including enhanced disclosures, cash benefits, and software benefits) that were "particularly valuable in light of the risks plaintiff would have faced if she proceeded to litigate her case"; there was "no collusive behavior between plaintiff and Seagate"; the settlement agreement provided ample time to submit claims; and "[t]he claim procedure [was] fair and reasonable . . . ." The court considered the class notice "was reasonably calculated to apprise class members of the litigation, and all material elements of the proposed settlement." The court noted that while 6.2 million hard drives were sold, and approximately 650,000 purchasers were provided e-mail notice (in addition to newspaper and Web site notice), only five class members objected to the settlement (three of whom were actually critical of plaintiff's claims), and only 35 people opted out of the class. Class counsel were awarded $1.75 million in attorney fees and $35,500 in costs, in accordance with the settlement agreement. Klausner timely appealed.

## DISCUSSION

Klausner raises arguments regarding the fairness of the settlement, the adequacy of notice to the plaintiff class, and the denial of his request to undertake discovery regarding his allegations that the settlement was the product of collusion. We conclude the trial court's orders must be vacated and the case remanded for notice to the class that properly defines class membership. But we will also exercise our discretion to address, and reject, the additional arguments raised by Klausner in this appeal.

### A. *Fairness of the Settlement*

■ "A trial court must approve a class action settlement agreement and may do so only after determining it is fair, adequate, and reasonable. [Citation.] It is vested with a broad discretion in making this determination. [Citation.] In exercising its discretion, that court should consider relevant factors, which may include, but are not limited to the strength of the plaintiffs' case, the risk, expense, complexity and duration of further litigation as a class action, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of

counsel, the presence of a governmental participant, and the reaction of class members to the proposed settlement. At the same time, the trial court should give '[d]ue regard . . . to what is otherwise a private consensual agreement between the parties.' [Citation.] Such regard limits its inquiry ' "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." ' [Citation.] ■ The trial court operates under a presumption of fairness when the settlement is the result of arm's-length negotiation, investigation and discovery that are sufficient to permit counsel and the court to act intelligently, counsel are experienced in similar litigation, and the percentage of objectors is small. [Citation.] Ultimately, the court's determination is simply ' " 'an amalgam of delicate balancing, gross approximations and rough justice.' " ' " (*In re Microsoft I–V Cases* (2006) 135 Cal.App.4th 706, 723 [37 Cal.Rptr.3d 660], fn. omitted, quoting *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800–1801 [56 Cal.Rptr.2d 483].)

We review the trial court's decision to approve a class action settlement in order to determine whether the trial court acted within its discretion. We do not reweigh the evidence or substitute our notions of fairness for the trial court's. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 234–235 [110 Cal.Rptr.2d 145]; *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1144–1146 [102 Cal.Rptr.2d 777].) "To merit reversal, both an abuse of discretion by the trial court must be 'clear' and the demonstration of it on appeal 'strong.' " (*7-Eleven, supra*, at p. 1146.)

Klausner asserts several reasons why the settlement should not have been approved. Most require us to draw inferences of collusion or unfairness based upon the structure and terms of the agreement. He criticizes the negotiation of a settlement before the class was certified, defendant's agreement to pay plaintiff's attorneys without critically assessing the proper measure of fees, and the absence of a common fund or residual *cy près* component to the agreement. None of these factors alone or in combination compel us to reverse the trial court for an abuse of discretion.

■ It is true that precertification settlements in class action cases " 'should be scrutinized more carefully.' " (*Wershba v. Apple Computer, Inc., supra*, 91 Cal.App.4th at p. 240.) But, these concerns are addressed by a careful review by the trial court, and precertification settlements are routinely approved where they are found fair and reasonable. (*Ibid.*) We cannot say that the fact this settlement was negotiated before the class was certified is evidence that it was unfair or collusive.

The provision for plaintiff's fee award also does not warrant the concern or criticism of the agreement that Klausner asserts. Defendant makes no unconditional agreement to pay plaintiff's attorneys without critical evaluation of their fees. Rather, it is up to plaintiff to petition the court for approval of up to $1.75 million in fees and $35,500 in costs and expenses. Defendant will not contest an application that does not exceed those amounts. The agreement thus required plaintiff to demonstrate to the court the reasonableness of the fees and costs, and sets a maximum on the amount she will seek. Any award of fees was subject to the court's approval, and, unlike in many class action settlements, the fees to be awarded in this case were not to be paid from a common fund, nor did they in any way lessen the amount of recovery available for class members. (See *Dunk v. Ford Motor Co., supra,* 48 Cal.App.4th at p. 1809.)

Moreover, the record reflects the court considered and awarded the maximum amount of fees after it determined that the hourly rates sought were "fair, just and reasonable," and the amount of work performed was appropriate. The court declined to award any fee multiplier because "the lodestar amount exceeded the maximum attorneys fees to be paid pursuant to the Settlement Agreement." The court also disallowed some costs claimed by counsel so the costs would not exceed the maximum allowable. Defendant's agreement to compensate plaintiff's attorneys does not raise our suspicion about possible collusion or unfairness of this settlement.

■ The absence of a common fund or residual *cy près* component from the settlement agreement also does not suggest collusion or unfairness. Klausner argues that "the likelihood of sufficient claims" for compensation from this settlement "is so low that the only way this settlement can be fair to the class is with a minimum settlement amount which is distributed by *cy pres* if not consumed by claims." Klausner provides us no authority to support his contention, and we have found none that compels the establishment of such a definite fund. Rather, courts have approved settlements, like this one, where there is no definitive monetary obligation imposed on a settling defendant. (See, e.g., *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 54 [75 Cal.Rptr.3d 413] [and cases cited therein].) We have no reason to question the fairness of this settlement or infer that it is the product of collusion just because it does not require defendant to incur a minimum financial obligation. This is especially so in light of the showing in support of other factors that bore upon the trial court's fairness determination.

When we review the factors the court considered to approve this settlement, we cannot conclude approval was an abuse of discretion. The court made a specific finding "that the settlement was achieved at arm's-length negotiations." That finding was supported by the parties' characterization of

the mediation, the court's experience observing the course of the litigation, and the mediator's declaration. The case was vigorously litigated for over two years. Plaintiff was represented by experienced counsel, and, as the court observed in the final approval hearing, the numbers of class members who objected or opted out of the class was very small. Moreover, plaintiff faced considerable risk in proceeding to trial, and the class recovery is significant in light of that risk. The court's order to approve settlement is the product of a reasoned exercise of discretion. (See *In re Microsoft I–V Cases, supra,* 135 Cal.App.4th at p. 723.)

There is no evidence that the parties to the settlement were intentionally deceptive or that they tried to mislead the court in seeking approval. We will not indulge Klausner's suggestion that approval be reversed on the basis of misconduct by counsel. (Cf. *Aviation Data, Inc. v. American Express Travel Related Services Co., Inc.* (2007) 152 Cal.App.4th 1522 [62 Cal.Rptr.3d 396].)

### B. *Adequacy of Notice to the Plaintiff Class*

Klausner also supports his claim of collusion by referring to the parties' changing positions on whether indirect purchasers of Seagate disc drives were class members. After the parties initially informed the court and Klausner that such purchasers were not within the plaintiff class, they eventually changed their positions and agreed that indirect purchasers were included. Although the scope of the class was different than the parties originally stated, the class definition, certification and notice did not change. This uncertainty over class membership does not evince collusion as much as it indicates the possible confusion over class membership due to an ambiguous class definition contained in the notice of settlement.

Our review of the trial court's fairness determination and manner of giving notice is governed by the abuse of discretion standard, but our review of the *content* of notice may be de novo. "To the extent the trial court's ruling is based on assertedly improper criteria or incorrect legal assumptions, we review those questions de novo." (*Hypertouch, Inc. v. Superior Court* (2005) 128 Cal.App.4th 1527, 1537 [27 Cal.Rptr.3d 839]; see also *Wershba v. Apple Computer, Inc., supra,* 91 Cal.App.4th at pp. 234–235.) Federal law is in accord. (*Molski v. Gleich* (9th Cir. 2003) 318 F.3d 937, 951.) Here, the purely legal question for our review is whether notice that contains an ambiguous definition of class membership is authorized by or consistent with the California Rules of Court relating to management of class action cases. (Cal. Rules of Court, rules 3.760–3.771.)

■ "The principal purpose of notice to the class is the protection of the integrity of the class action process, one of the functions of which is to

prevent burdening the courts with multiple claims where one will do." (*Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 970 [124 Cal.Rptr. 376].) The notice " 'must fairly apprise the class members of the terms of the proposed compromise and of the options open to dissenting class members.' " (*Wershba v. Apple Computer, Inc., supra,* 91 Cal.App.4th at p. 251.) The rules reflect a scheme that is designed to clearly describe class members who should be notified of the action and may be affected by its resolution. An order certifying a class "must contain a description of the class . . . ." (Cal. Rules of Court, rule 3.765(a).) When the court determines it is unnecessary or not feasible to personally notify all potential class members of an action, "the court may order a means of notice reasonably calculated to apprise the class members of the pendency of the action . . . ." (Cal. Rules of Court, rule 3.766(f).) When the court approves the settlement or compromise of a class action, it must give notice to the class of its preliminary approval and the opportunity for class members to object and, in appropriate cases, opt out of the class. (Cal. Rules of Court, rules 3.766(d), 3.769.) ■ Once a settlement is approved, the court is required to enter judgment upon the settlement and the judgment "must include and describe those whom the court finds to be members of the class." (Cal. Rules of Court, rule 3.771(a).) These principles rest upon an assumption that the definition of a plaintiff class will be clear and free from obvious ambiguity.

■ A class definition that is ambiguous presents a problem of class ascertainability that " 'goes to the heart of the question of class certification, which requires a class definition that is "precise, objective and presently ascertainable." ' " (*Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, 858 [7 Cal.Rptr.3d 28].) In the absence of an ascertainable class, " 'it is not possible to give adequate notice to class members or to determine after the litigation has concluded who is barred from relitigating.' " (*Ibid.*) The goal in defining the class is to use terminology that will convey sufficient meaning to enable persons hearing it to determine whether they are members of the class plaintiff wishes to represent.

Here, the class notice advised recipients that they were "a member of the settlement class if, between March 22, 2001, and September 26, 2007, you purchased in the United States a new Seagate brand hard disc drive from an authorized Seagate retailer or distributor. . . ." By its terms, and as evidenced by the changing positions of the parties, the notice is unclear whether an indirect purchaser is within the plaintiff class.[8]

The parties advised the court that they intended to exclude from settlement only those purchasers who obtained their disc drives from resellers of "fake,

---

[8] An example of such a purchaser would be one who bought a new Seagate drive from other than an authorized retailer where that retailer obtained the drive from an authorized distributor.

grey market, used, or stolen drives." We have no disagreement with the parties' objective and no quarrel with the trial court's finding that exclusion of "those who purchased outside of Seagate's authorized retail channels" is "rationally based on legitimate considerations." The problem is that a fair reading of the class definition and the notice has the potential to lead some of those who purchased within Seagate's authorized retail channels to conclude they are not members of the class.

Seagate argues that this is all much ado about nothing. It says that 13.7 percent of the claims were received from purchasers who bought their disc drives from "a merchant that is not listed on Seagate's Web site as a Seagate authorized retailer or distributor."[9] Neither Seagate nor plaintiff's counsel received inquiries regarding the authorized status of a retailer or distributor in connection with submission of a claim. Thus, Seagate concludes that consumers were obviously not confused about the scope of the plaintiff class. The trial court made a similar observation when it concluded that the absence of any such inquiries or concerns from potential class members was "an indication that the class members understand the terms of the settlement and are satisfied with its provisions." But the error we identify arises from the ambiguity in the class notice because it creates a real possibility that indirect purchasers who erroneously conclude they are not members of the plaintiff class may never be heard from and the judgment will be res judicata on their claims. (See *Global Minerals & Metals Corp. v. Superior Court, supra,* 113 Cal.App.4th at p. 858; *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 914 [107 Cal.Rptr.2d 761].)

■ We have no impression that there are large numbers of claimants who will come forward if the class definition and notice are corrected, but the problem with this notice creates more than a remote theoretical possibility that the claims of unsuspecting class members will be brushed aside. (See *Cartt v. Superior Court, supra,* 50 Cal.App.3d at p. 970 [discussing the notice obligation in the context of an unduly burdensome direct notice procedure].) An ambiguous class definition does not provide adequate notice. (See *Global Minerals & Metals Corp. v. Superior Court, supra,* 113 Cal.App.4th at p. 858; see also *Twigg v. Sears, Roebuck & Co.* (11th Cir. 1998) 153 F.3d 1222, 1227.) It was error for the trial court to approve this settlement without correcting the ambiguous definition of the plaintiff class.

■ Although we disapprove the class definition and notice, the error we identify is not fatal to this settlement. "[I]f necessary to preserve the case as a

---

[9] While Seagate argues that 13.7 percent of claims came from those who did not purchase from an authorized retailer as listed on Seagate's Web site, the record does not disclose how many of those claimants were aware that they were claiming through an unauthorized retailer. We thus have no way of determining whether indirect purchasers were actually misled by the notice.

class action, the court itself can and should redefine the class where the evidence before it shows such a redefined class would be ascertainable." (*Hicks v. Kaufman & Broad Home Corp., supra,* 89 Cal.App.4th at p. 916.) As it is the court's duty to certify an identifiable and ascertainable class, the court is not limited, as Klausner suggests, to the class description contained in plaintiff's complaint. We will therefore vacate and remand for the purpose of clarifying the scope of the plaintiff class and renoticing this settlement.

### C. *Klausner's Request for Discovery*

Klausner also seeks a remand "to allow full investigation by discovery of the possibility of collusion in the negotiation of the settlement."[10] At the final fairness hearing, Klausner argued that "the development of the issue around authorized retailers shows serious infirmity in the process of negotiation of this settlement," and he sought to file a motion to conduct discovery about "negotiations at the settlement." When the court asked what kind of discovery he contemplated, Klausner's counsel said he "would start with such paper record of communications between the parties as exists," and also anticipated he would want to take depositions of the parties' counsel.

"It is well established . . . that objectors are not entitled to discovery concerning settlement negotiations between the parties without evidence indicating that there was collusion between plaintiffs and defendants in the negotiating process." (2 McLaughlin on Class Actions: Law and Practice (5th ed. 2008) § 6:10, p. 58; see *Hemphill v. San Diego Ass'n of Realtors, Inc.* (S.D.Cal. 2004) 225 F.R.D. 616, 620 ["discovery of evidence pertaining to settlement negotiations is appropriate only in rare circumstances"].)

This court recently observed that "the trial court should limit discovery in view of the context in which it is being requested. Discovery is required not to prepare the case for trial, but simply to provide sufficient information to permit an intelligent evaluation of the terms on which the case is proposed to be settled. The objecting parties should not be permitted to frustrate the mutual interest of the class members and the defendant to resolve the litigation promptly by conducting extended or unnecessary discovery." (*Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 132 [85 Cal.Rptr.3d 20].) The trial court properly concluded there was no evidence of collusion between the parties, and Klausner has not shown the court abused

---

[10] Klausner's opening brief contains no specific argument regarding the trial court's denial of his request for discovery, but both respondents' briefs address the issue, as does Klausner's reply. We will address the issue briefly on the merits. (Cf. *Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1372, fn. 11 [131 Cal.Rptr.2d 524] [arguments not raised in the opening brief are waived on appeal].)

its discretion when it denied his request that he be allowed discovery in order to try and find some. (See *Wershba v. Apple Computer, Inc., supra*, 91 Cal.App.4th at p. 241.)

## DISPOSITION

We vacate the orders of the trial court and remand for further proceedings to correct the class definition to unambiguously state that indirect purchasers of new Seagate disc drives are members of the plaintiff class and to renotice the settlement in order to give adequate notice to all class members, and allow for additional claims, objections or opt-outs. Costs are awarded to appellant.

Pollak, Acting P. J., and Jenkins, J., concurred.