Filed 1/28/15  Kudrna v. Propark America West CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| MARK KUDRNA et al., | |
|     Plaintiffs and Respondents, | A141887 |
|     v. | |
| PROPARK AMERICA WEST, LLC, | |
|     Defendant and Respondent; | (San Francisco City and County Super. Ct. No. CGC-10-498142) |
| ANTHONY JOHNSON et al., | |
|     Objectors and Appellants. | |

Anthony Johnson and Seth King, two objectors to the settlement of a class action against defendant Propark America West, LLC (Propark), appeal from the judgment approving the settlement agreement. They contend the settlement is not fair, adequate and reasonable, and the notice of the proposed settlement sent to class members was insufficient to satisfy due process requirements. Although the amount paid in settlement is far less than the amount claimed, the trial court, which twice found the proposed settlement agreement inadequate, carefully considered the appropriate factors before finally approving it. In view of the many formidable obstacles the class faced in recovering anything close to the claimed damages, the trial court did not abuse its discretion in approving the settlement. We shall therefore affirm the judgment.

1

## Background

On March 26, 2010, plaintiff Mark Kudrna filed the instant class action against Propark on behalf of himself and "[a]ll persons who were employed in nonexempt parking attendant positions by [Propark] in California at any time on or after March 26, 2006." The complaint alleges causes of action for: (1) unlawful failure to pay wages due (IWC Order;[1] Lab. Code, §§ 200-204, 510, 1198); (2) unlawful failure to pay overtime wages (IWC Order, § 3; Lab. Code, §§ 510, 1194, 1198); (3) failure to provide meal and rest periods (IWC Order, §§ 11 & 12; Lab. Code, §§ 226.7, 512); (4) failure to provide accurate itemized wage statements (Lab. Code, §§ 226, subds. (a) & (e), 1174); and (5) unfair business practices under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). The following claims were subsequently added in an amended complaint: (6) failure to pay minimum wage (IWC Order, § 4; Lab. Code, § 1198), (7) failure to reimburse expenses (IWC Order, § 9; Lab. Code, §§ 406, 1998, 2802, subd. (a)), (8) failure to provide suitable seating (IWC Order, § 14; Lab. Code, § 1198), (9) unlawful policy or practice forfeiting vested vacation pay (Lab. Code, § 227.3), (10) wrongful termination (Lab. Code, § 98.6), and (11) civil penalties under the Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA).

At the outset, the parties agreed to informally exchange key data and documents necessary for class counsel to properly evaluate the claims for purposes of settlement. The parties eventually attended two mediation sessions before an experienced mediator with class action expertise. After the second mediation session on January 9, 2012, the parties reached agreement on the essential terms of a class-wide settlement. The parties reached an agreement to the final settlement terms after months of additional bilateral negotiations, and executed the proposed settlement agreement on May 17, 2012.

The settlement provides for defendant to pay $250,000 into a nonreversionary settlement fund. Following distribution of court approved notice, class members who submitted a valid claim were to receive an amount based on the number of hours they

---

[1] Industrial Welfare Commission Order No. 9-2001, effective January 1, 2001 (Cal. Code Regs, tit. 8, § 11090).

worked, as a fraction of the total hours worked by all class members. Alternatively, class members who submitted a claim form could elect to receive a parking voucher valued at twice the amount of his or her cash entitlement, plus an amount equal to the employee's tax obligation based on receipt of the parking voucher. As to attorney fees and costs, the agreement provides that the court may award class counsel one-third of the fund in attorney fees ($83,333) plus reasonable, actual costs incurred ($11,343). Kudrna, as representative plaintiff, was to be paid a $3,500 "incentive award," and $26,000 was to be set aside to cover the settlement administrator's expenses. Further, $2,500 was to be paid to the California Labor and Workforce Development Agency to cover civil penalties under the PAGA. Ultimately, $123,324 would remain from the gross settlement amount for distribution to class members. Class members requesting cash payments would recover an amount in the range of $127.33 to $990.12. Class members requesting parking vouchers would recover an amount in the range of $118.23 to $1,089.

The case was managed from the outset by a highly respected and experienced judge in San Francisco's complex civil litigation department. The trial court conducted five hearings addressed to settlement approval—three before granting preliminary approval and two before granting final approval. Kudrna first moved for preliminary approval of the settlement on June 11, 2012. At the July 17, 2012 hearing on the motion, the trial court identified several problems with the settlement agreement and related submissions, including an overbroad release, an unfiled complaint referenced in the settlement agreement, insufficient evidence to evaluate the extent of discovery and the potential value of the case, insufficient evidence to warrant conditional class certification, and an imprecise class definition. In response, Kudrna withdrew his initial motion. He submitted a revised motion on October 29, 2012. To address the court's concerns, Kudrna filed an amended complaint on July 31, 2012, and the parties amended the class definition and scope of the release. Class counsel also provided a declaration that described the informal investigation and discovery exchange that took place prior to the mediation sessions; assessed the value of the claims brought, their maximum value, and

3

the significant risks associated with litigating them through trial; and outlined the adversarial negotiations that led to the settlement agreement.

On November 21, 2012, the trial court denied Kudrna's revised motion for preliminary approval, stating that it failed to correct most of its concerns. It specified several issues with the parties' submissions: there was inadequate evidence for the court to assess the "nature and magnitude of the claims being settled, as well as impediments to recovery," there was insufficient evidence for the court to determine whether sufficient discovery had taken place, the release of claims in the proposed settlement agreement was overbroad as it did "not anchor the released claims to the facts alleged in the complaint," the class definition was impermissibly vague as it did not adequately define the term "parking attendant," there was insufficient evidence for the court to evaluate whether "common questions of law or fact exist with respect to the class claims," and there was insufficient evidence about Kudrna for the court to conditionally appoint him as class representative.

On April 23, 2013, Kudrna filed a third motion for preliminary approval. The settlement agreement had been revised to narrow the release provision and clarify the scope and identity of class members. In support of this motion, class counsel filed a declaration that, among other things, (1) provides additional analysis of the class claims, their maximum value, and the significant risks associated with litigating them through class certification and trial and (2) further details class counsel's investigation of the case and the nature and extent of the discovery conducted, including analysis of the employment data produced by Propark, extensive interviews with Kudrna, and obtaining declarations from more than 20 putative class members discussing the claims. A declaration by Kudrna described his claims, his involvement in the action, and his informed opinion that the settlement is "fair and reasonable" both to him individually and to the members of the class.

The additional declarations disclosed that the maximum recoverable damages if the class were to prevail on all of its claims amounted to several millions of dollars[2] but that there was little chance of obtaining any such recovery. Counsel noted several potential issues that would hinder class certification, including differences in the operations of Propark's more than 50 California parking facility locations, representative plaintiff Kudrna's atypical break schedule, the large number of class members who worked fewer than seven days (apparently as much as 29 percent of the class), and the existence of collective bargaining agreements covering some class members. Counsel also anticipated several problems with the meal and rest break, overtime, and expense requirement claims, including the possible insufficiency of evidence to establish damages, Propark's likely argument that it made meal breaks available and had no obligation to ensure they were actually taken (see *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004), the likely argument that plaintiff's off-the-clock claims

---

[2] Based on data provided by defendant, class counsel calculated that class members worked approximately 69,423 total workweeks, at an average hourly wage of $10.84. Based on these figures, counsel calculated the value of class members' meal and rest break claims to be $10.84 per break missed. Likewise, counsel estimated the maximum potential value of overtime claims to be $8.13 for each day that class members worked at least an eight-hour shift while missing their 30-minute meal period. He noted, however, that, based on the number of class members employed part-time, approximately 61 percent of all shifts could result in potential overtime violations. With respect to the potential value of the reimbursement claims, counsel estimated a $100 one-time uniform purchase cost and $5 per workweek in laundering expenses. While no civil penalties attach to the "suitable seating" claim, counsel estimated that penalties under the PAGA could amount to a maximum potential recovery of $4,900 per class member. Counsel also explained that class members accumulated approximately 28 hours of unused vacation time per year. Based on a 49.7 week average length of employment, he estimated the maximum potential value of the unlawful vacation forfeiture claim to be $292.68 for each class member. For plaintiff's itemized wage claim, counsel estimated the average damages per class member to be $2,450 based on an average 25 pay periods worked. (See Lab. Code, § 226, subd. (e)(1) [$50 for initial pay period violation, plus $100 per violation each pay period thereafter].) Finally counsel noted that, given the remedies provided under other claims, plaintiffs would not receive any significant additional recovery on unfair business practices under the unfair competition law or the failure to pay minimum wage claims.

are false or de minimis, and inconsistencies in class members' declarations concerning the number of breaks actually missed. Finally, class counsel anticipated several problems with its claims for penalties and other punitive recoveries, including Propark's likely argument that its actions were not "willful" when failing to pay wages under Labor Code section 203, the likely argument that there was no "injury" that would entitle the class to recover for itemized statement violations under Labor Code section 226,[3] and the uncertainty over the standards for awarding penalties under the PAGA. In view of these substantial issues and uncertainties, counsel found the settlement to be "in the best interests of the class and represents a fair and adequate balance between the potential claims value and the risk of recovering little or nothing by further litigation."

The trial court granted preliminary settlement approval and class certification on May 14, 2014. On July 23, 2013, notice packets were sent to the 1,807 names on the class list. The notice provided class members with three options: (1) submit a claim form to receive settlement benefits, (2) opt out of the class, thereby receiving no part of the settlement proceeds, giving up no rights and preserving the option of bringing an individual claim; or (3) remain in the class but object to the terms of the settlement.

A total of 481 class members submitted valid claims, 12 class members opted out of the settlement, and 13 class members submitted written objections.[4] Johnson and King, the two objectors who have brought this appeal, appeared at the hearings on final approval and argued their objections before the trial court. The preliminary assessment of the settlement agreement submitted to the court by the settlement administrator noted that eight class members were sent a notice that contained the incorrect number of hours worked for those individuals; 36 class members were inadvertently not sent a notice; and 281 notices were sent to wrong addresses. The parties submitted a revised notice plan to

---

[3] Class counsel also stated that class members would need to work 40 pay periods to receive maximum damages under this statute. The average number of pay periods worked for class members is 25.

[4] Two individuals who opted out of the class also submitted objections. Their objections were not counted. (See *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1128, 1138 [class member who opts out has no standing to object]).

6

resolve these discrepancies, and the trial court approved it. Kudrna then filed a renewed motion for final approval; and, on May 2, 2014, the trial court granted final approval of the class action settlement agreement.

The two objectors filed a timely notice of appeal.

**Discussion**

## I. Fairness of the Settlement

To "prevent fraud, collusion or unfairness to the class, the settlement or dismissal of a class action requires court approval and notice to the class. [Citations.]" (*Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 149; accord, *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800 (*Dunk*).) The trial court " 'must . . . reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. [Citation.]" (*Dunk*, at p. 1801; see also Cal. Rules of Court, rule 3.769(g).) In making this determination, the court should consider all relevant factors, including but not limited to "the strength of [the] plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. [Citation.]" (*Dunk*, *supra*, at p. 1801) The trial court should also give "[d]ue regard . . . to what is otherwise a private consensual agreement between the parties." (*Ibid.*) " 'Ultimately, the [trial] court's determination is nothing more than essentially "an amalgam of delicate balancing, gross approximations and rough justice." [Citation.]' [Citation.]" (*Ibid.*) At the same time the trial court needs to operate under an initial presumption of fairness where the settlement is the result of arm's-length negotiation, the investigation and discovery are sufficient to permit counsel and the court to act intelligently, the counsel are experienced in similar litigation, and the percentage of objectors is small. (*Id.* at p. 1802.)

We review the trial court's settlement approval for clear abuse of discretion. "We will not 'substitute our notions of fairness for those of the [trial court] and the parties to the agreement. [Citations.]' [Citation.] ' "So long as the record . . . is adequate to reach 'an intelligent and objective opinion of the probabilities of success should the claim be litigated' and 'form an educated estimate of the complexity, expense and likely duration of such litigation, . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise,' it is sufficient." [Citations.] . . . [Citation.]' [Citation.]" (*Dunk*, *supra*, 48 Cal.App.4th at p. 1802.) Here, the trial court's conclusion that the settlement was fair, adequate, and reasonable—reached after almost two years of hearings, inquiries, evidentiary supplementation, and adjustments—is well supported by the record.

The settlement's terms were reached after extensive, arms-length negotiations between the parties, spanning more than one and one-half years. Class counsel's practice is "devoted almost exclusively to the prosecution of wage and hour class action matters," and there was no challenge to counsels' experience. Objectors presented no credible evidence of the alleged "collusion, fraud, or misrepresentation," or any other "prejudicial misconduct" on the part of the court or the parties.[5] The percentage of the class objecting to or opting out of the settlement is small. Out of a class of approximately 1,800 members, only 12 class members excluded themselves from the settlement, and only 13 class members objected. Finally, the court satisfied itself that adequate discovery and

_____

[5] Objectors allege that class counsel acted inappropriately in counseling them to opt-out of the settlement. Even if true, it was not improper for class counsel to advise the objectors that, given their concerns, they might be better served by opting out of the settlement to preserve their rights to bring individual claims. There is no indication that class counsel suppressed or failed to respond to objectors' communications. As directed by the trial court, class counsel submitted all objections to the trial court, including those of Johnson and King. Objectors also appear to argue that Propark acted fraudulently and "had no right to be heard" in court because California's Franchise Tax Board had revoked its corporate status. The trial court properly rejected this contention. In addition to the fact that this contention was based on an unauthenticated hearsay document, a declaration from the Franchise Tax Board indicates that a purported suspension of Propark's status was entirely in error.

investigation had taken place before giving its approval. (See *Dunk v. Ford Motor Co.*, *supra*, 48 Cal.App.4th at p. 1802 [fairness can be presumed provided certain elements are present]).

The trial court was diligent in discharging its obligation to evaluate the settlement's reasonableness, emphasizing its "independent obligation to satisfy itself from the evidentiary record" that the proposed settlement falls "within the range of possible final judicial approval" under *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116 and *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 (*Wershba*). It also stressed that counsel's "generalized and conclusory statements" would not replace this "independent obligation."

When denying Kudrna's motion for preliminary approval on November 21, 2012, the court identified a number of problems with the settlement agreement and demanded additional supplementation. Objectors' contend the settlement is not fair because its terms "never changed" after the court's initial disapproval. To the contrary, the court did not grant ultimate approval until each of its concerns was adequately addressed. The amended settlement agreement narrowed the release provision to release only those claims "that [were] asserted in the [a]ction, or that [are] based upon or arise[] out of, in whole or in part, any of the facts alleged in the [a]ction, including any theory of retaliation based on those facts." This revised release removed broader references to the Labor Code and the Business and Professions Code, specifically addressing the trial court's concern that the released claims "could be anything . . . given the expansive scope of [the Business and Professions Code]." Further, the release does not preclude objectors' alleged labor grievances under the collective bargaining agreement or violations under San Francisco's Health Care Security Ordinance, none of which relate to the claims brought. The revised agreement also directly addresses the trial court's concerns with previous language that left "uncertain who belongs in the class and who would be ultimately bound by any judgment in this action" by amending the class definition to "all hourly nonexempt employees . . . who worked . . . at a . . . parking facility owned or operated by" Propark.

In challenging the fairness of the settlement, objectors do not focus on any particular terms of the settlement agreement or the total settlement amount. Rather, they focus their argument on the amounts they believe they are owed individually. However, given the potential problems and uncertainties associated with continued litigation, which are spelled out in the record and the court expressly considered, they provide no reason to conclude that the trial court abused its discretion in approving the settlement agreement which necessarily dictates the amounts the two objectors will receive. The fact that the settlement does not provide the objectors with the full recovery to which they claim they are entitled, but might or might not obtain were the action pursued, does not necessarily render the settlement unfair, inadequate, or unreasonable. "[T]he test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances. [Citation.]" (*Wershba*, *supra*, 91 Cal.App.4th at p. 250.)

Objectors also make several arguments not raised to the trial court below. A settlement's fairness "is addressed to the trial court's discretion in the first instance." (*Wershba, supra*, 91 Cal.App.4th at pp. 236-237.) To the extent that objectors raise entirely new objections here, we need not consider them for the first time on appeal. (*Id.* at p. 237.) In all events the additional arguments are without merit. Objectors allege that Kudrna cannot adequately represent the class members working in Propark's San Francisco facilities because Kudrna himself did not work in San Francisco. (See *Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1590, fn.14 [representative plaintiff must be a member of the class he seeks to represent].) However, they do not substantiate their contention that the interests of the class's San Francisco members differ from those of other class members. The objectors are correct that Kudrna does not have standing to assert claims based on San Francisco's Health Care Security Ordinance (S.F. Admin. Code, ch. 14), but such claims were never asserted in the present case.

Objectors also appear to argue that the settlement violated their constitutional right to a jury trial, as well as their contractual entitlement to arbitration. But any such rights are necessarily relinquished as part of a settlement. Compromise itself does not render the

settlement unfair. (See *Wershba, supra*, 91 Cal.App.4th at p. 250 ["Compromise is inherent and necessary in the settlement process."].) Here, the parties agreed to compromise their claims rather than proceed with further litigation. Objectors and other class members who disagreed that the settlement was in their interests were entitled to opt out of the settlement and pursue their claims before a jury or an arbitrator. There was no violation of constitutional rights.

Relying on a collective bargaining agreement that applied to some San Francisco class members for a portion of the class period, objectors also claim that the parties misled the trial court when presenting an average hourly class pay rate of $10.84. However, class counsel calculated the $10.84 rate using actual payroll data provided by Propark. Objectors, on the other hand, point to a $21.46 rate applicable only to certain "journeyman" employees under a single collective bargaining agreement that applied to a fraction of the class for a portion of the class period. This "single data point," as Propark properly notes, "cannot discredit—let alone render misleading—the evidence of the actual *average* rate calculated from payroll records."

## II. Notice Issues

Objectors also argue that the class notice did not sufficiently satisfy due process requirements. A class notice must " ' "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings," ' " and the trial court " 'has virtually complete discretion as to the manner of giving notice to class members.' " (*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1164.)

Objectors admit receipt of the notice packet, but contend it should have informed members about "how the [c]ourt would receive any objections," and that objections "must be electronically filed." This contention is also without merit. Electronic filing of objections was not required, nor was the process for filing objections improperly described. Objectors encountered difficulty in filing their objections only because they failed to follow instructions. Instead of mailing their written objections to the court, as described in the notice, objectors attempted to file their objections in person with the

11

court clerk's office. After Johnson voiced his "confusion" about the objection process, the trial court explicitly ordered counsel for both parties to submit all objections received by them or the claims administrator, whether or not they were filed with the trial court— thus, eliminating any prejudice. The trial court considered all objections received from any source before granting final approval to the settlement agreement, and there is no evidence that any class member submitted an objection that was not considered.[6] We find no abuse of discretion.

## Disposition

The judgment is affirmed.

---

[6] Objectors argue that Dennis Martinez, a class member who opted out of the settlement, was not given the opportunity to object. During the November 22, 2013 hearing, Martinez explained that he wanted to file an objection with objectors Johnson and King but failed to do so because he did not receive the notice "until two-and-a-half, three weeks before the due date." Because his "time is extremely limited," Martinez claims that "[a]t the last minute," he "went on the internet, and . . . tried filing [an objection]," but "was unsuccessful." He then decided to opt-out. Having opted out, Martinez does not have standing to object. (See *Rebney v. Wells Fargo, supra,* 220 Cal.App.3d at pp. 1128, 1138.) In any case, the trial court did not abuse its discretion in approving the class notice even assuming Martinez's individual notice was "late." Notice need only be " 'reasonably calculated to apprise the class members of the pendency of the action.' " (*Cho v. Seagate Technology Holdings, Inc.* (2009) 177 Cal.App.4th 734, 746.) Actual notice is not required. (*Wershba, supra*, 91 Cal.App.4th at p. 251.) Moreover, while it appears Martinez was ready to file his objection, it is unclear why he did not follow the mailing instructions in the notice instead of attempting to file it online. Still, given his concerns, the court gave Martinez the opportunity to voice his objections at the hearing; and, in any event, Martinez opted out of the class and had no standing to object.

_____
Pollak, J.

We concur:


_____
McGuiness, P. J.


_____
Jenkins, J.