Filed 8/5/14  Amin's Oil v. Biswas CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| AMIN'S OIL, INC., | B242081 |
| Plaintiff, Cross-defendant and Appellant, | (Los Angeles County Super. Ct. No. BC421253) |
| v. | |
| INDROGIT BISWAS, | |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert L. Hess, Judge.  Affirmed.

The Ghosh Law Group, Joanna Ghosh and Amy Ghosh for Plaintiff, Cross-defendant and Appellant.

Law Offices of Michael J. Sundstedt, Michael J. Sundstedt, and Lani M. Goodman for Defendant, Cross-complainant and Respondent.

\* \* \* \* \* \* \* \* \* \*

Plaintiff Amin's Oil, Inc., sued its former employee, defendant Indrogit Biswas, for conversion, alleging defendant had embezzled hundreds of thousands of dollars over the course of his employment. Defendant cross-complained for unpaid overtime wages. The jury found in favor of the defendant by special verdict, on both the complaint and cross-complaint, awarding him unpaid overtime wages and penalties of $16,215.

The trial court awarded attorney fees to defendant of $68,450 under Labor Code section 1194, subdivision (a) for the prosecution of his cross-complaint, and awarded additional attorney fees of $60,700 and expert fees of $6,349 under Code of Civil Procedure section 2033.420, as expenses defendant incurred in having to establish the truth of certain facts (that defendant did not convert plaintiff's property) which plaintiff had denied in response to defendant's requests for admission.

Plaintiff appeals, arguing that: (1) the trial court erroneously awarded defendant half of his total attorney fees under Labor Code section 1194; (2) the sanction under Code of Civil Procedure section 2033.420 was improper; and (3) the trial court made a number of erroneous rulings, such as allowing summaries created by defendant's expert to be admitted into evidence, and allowing the case to be decided by a jury of 11.

Finding no merit in any of these contentions, we affirm.

## BACKGROUND

### 1. Pretrial and Trial Proceedings

Plaintiff filed this action for conversion on September 8, 2009, alleging defendant embezzled money while working for plaintiff as a service station cashier, by ringing up false transactions on his personal credit cards, and then voiding those transactions after taking the corresponding amount of cash out of the register. Defendant denied the allegations in his answer and filed a cross-complaint for unpaid overtime wages on October 9, 2009.

On September 9, 2009, plaintiff sought a temporary restraining order and preliminary injunction preventing defendant from accessing his bank accounts, which had combined balances of over $128,000. According to the petition for a preliminary

2

injunction, plaintiff discovered the embezzlement after finding defendant's bank statements showing deposits that appeared to be suspicious given defendant's earnings. In support of the petition, plaintiff included a number of receipts showing charges made by defendant at the gas station with defendant's personal credit cards.

In opposition, defendant declared he worked over 100 hours per week at $10 per hour, and had saved $270 each week over the course of his nine years of employment. Plaintiff paid defendant by check for 40 hours per week, with cash for the remainder of his hours, and failed to pay any overtime compensation. Defendant ran the debit card transactions (and voided them) on the instructions of plaintiff's owner, but he did not receive any cash from these transactions.

In a supplemental petition for an injunction, plaintiff submitted the declaration of Roy McGarrell, a certified public accountant who performed a forensic accounting, and discovered "theft" of $123,431.15 between September 2008 and July 2009, "accomplished by a sophisticated plan of debit and credit card fraud . . . ." However, the accounting only detailed the credit transactions (consisting of debits and voids), and did not provide an accounting of whether any cash was actually missing from the gas station, as Mr. McGarrell did not review plaintiff's cash deposits. Mr. McGarrell's report also noted, "I cannot say with one hundred percent certainty . . . that the amount quoted . . . is totally correct as I was only able to test some of the records."

The trial court denied the application for a preliminary injunction, finding that plaintiff should have sought a writ of attachment instead of an injunction, requiring a showing that stolen funds were deposited into defendant's bank accounts. The court concluded that no such showing had been made, finding "[p]laintiff[] [has] not presented sufficient evidence linking the allegedly stolen money to Defendant Biswas's two [bank] accounts."

On August 30, 2010, defendant propounded his first set of requests for admission and form interrogatories. The first request sought plaintiff's admission that: "Indrogit Biswas never converted any property owned by you, Amirul Islam [(plaintiff's owner)]." The second request asked plaintiff to admit: "Indrogit Biswas never converted any

3

property owned by Amin's Oil, Inc., which operated a gasoline station under the name Amin Oil and a convenience store under the name of Food Mart at 2603 South Normandie Avenue, Los Angeles, California 90007."

Plaintiff responded on October 12, 2010. No objections to these requests for admission were interposed, and plaintiff denied them. In response to the form interrogatory seeking the facts in support of any denial, plaintiff explained its denials by stating only: "Indrogit Biswas did convert property belonging to Amirul Islam, to wit: cash."

On October 28, 2010, the parties stipulated that all of the claims against defendant were for cash conversions from Food Mart sales, and that some of the claims arose from the conversion of cash related to the sale of marijuana and gasoline. (Plaintiff also operated a medical marijuana dispensary.) The parties limited their claims to the period of August 9, 2006, to August 9, 2009.

The jury trial commenced on October 18, 2011, and the case was tried over a period of 13 days. Mr. Islam's wife, Reshma Rahman, testified that the gas station had three 8-hour shifts. The gas station changed from Amin's Shell to Amin's Oil in 2005. Defendant was hired in 2000 as a maintenance man. His shift was from 11:00 p.m. to 7:00 a.m. In 2005, defendant became a cashier, and started working a split shift, from 7:00 a.m. to 10:00 a.m., and then from 3:00 p.m. to 7:00 p.m. Plaintiff's employees were never paid in cash.

Ms. Rahman became suspicious of defendant in 2008, when she found a credit card receipt with the customer's name scratched out. Employees are prohibited from using their personal credit cards at the gas station. She again became suspicious after defendant's baby was born, when defendant bought his wife $5,000 worth of jewelry. Defendant also arranged for his mother (who lived in defendant's native country of Bangladesh) to visit Bombay to receive medical care, which is very expensive. Ms. Rahman was suspicious how defendant could afford to do these things with his level of income.

4

The gas station was equipped with security cameras, which were in place since 2000. On August 8, 2009, Ms. Rahman checked the gas station's surveillance cameras (she could access a live feed from home), and saw defendant swipe a card he took from his pocket, and throw a receipt in the trash can. He did this three or four times. When confronted, defendant said he gave some "Mexican Guy" cash from a credit card transaction. Defendant also denied having anything in his pockets, but when pressed, he revealed 12 credit cards. When Ms. Rahman called Chase Bank to confirm one of the transactions she witnessed earlier that day, the representative told her the charge had been voided and refunded to defendant.

On cross-examination, Ms. Rahman admitted that the work schedules which were turned over in discovery, and given to the gas station's accountant, did not accurately reflect the hours she worked. Also, none of the store's video footage showed defendant stealing any cash. The footage from August 8, 2009, showed defendant removing cash from the register, but the video did not show what he did with the cash.

Mr. Islam testified that he never told defendant to use his personal credit cards at the gas station. Defendant worked a split shift, did not work more than eight hours a day, and was paid by check. However, Mr. Islam admitted the gas station generated only two "shift reports" per day which recorded sales occurring over two 12-hour shifts.

On cross-examination, Mr. Islam admitted there were numerous errors and inconsistencies in his company's records, including the work schedules.

Plaintiff's expert, Jason Engel, a certified public accountant, testified that money was missing from the gas station's register on a daily basis.

Defendant testified he started working as a cashier for plaintiff in 2000. For several years, defendant worked at least a 12-hour shift, from 7:00 a.m. to 7:00 p.m. He was paid by payroll check for the first 40 hours he worked each week, and he was paid in cash for the remainder of the hours he worked. Defendant was not paid any overtime wages. Sometimes defendant worked up to 95 hours in a week. There were only two 12-hour shifts at the gas station; day shift (7:00 a.m. to 7:00 p.m.) and night shift (7:00 p.m. to 7:00 a.m.). Defendant never worked a split shift.

5

Defendant also testified to his very frugal lifestyle and saving habits. For example, he lived in a one bedroom apartment with three other roommates for a number of years. By 2005, defendant was able to save $125,000 or $130,000.

There were fewer customers after the gas station became independent from Shell in 2005. Mr. Islam talked about selling the business because it was not doing well. He told defendant to use his personal credit cards to make fake transactions so that Mr. Islam could inflate the sales performance of the gas station to justify a higher purchase price for the business. Defendant did this, as instructed, on a daily basis. Defendant never took any money. Mr. Islam also operated a marijuana collective next door to the gas station, and used cash from the gas station to purchase marijuana.

In 2008 or 2009, defendant asked Mr. Islam to pay him overtime. Mr. Islam said he would consider it, but never brought it up again. Defendant asked Mr. Islam again in June or July 2009. Mr. Islam became enraged, and threatened to fire defendant for requesting overtime wages. Ultimately, Mr. Islam fired defendant several days after August 8, 2009, telling defendant he was fired because he had requested overtime. Mr. Islam also threatened to put defendant in jail if he went to labor court. Mr. Islam said nothing about any stolen money.

Defendant testified that all of the time schedules in plaintiff's exhibits were falsified. In 2009, Mr. Islam had asked defendant to create schedules showing workweeks of 40 hours or less for "tax purposes."

Defendant's former roommate, Sheike Salim, confirmed defendant's work schedule. Former employees of Amin's Oil also confirmed the hours defendant worked.

Defendant's expert, William Adams, a certified public accountant, analyzed defendant's income and spending habits, and opined that defendant would have been able accumulate significant savings of over $200,000. Mr. Adams also looked at plaintiff's financial records, including sales reports, shift reports, and financial statements prepared by Mr. Islam's accountant, to determine if any money was missing. The records were clearly false and fabricated, and could not be reconciled. Mr. Adams also noted that revenues went *down* after defendant was terminated.

Near the end of trial, a juror asked to be excused because of a personal matter. The parties and the court discussed what to do, since excusing the juror would leave a panel of only 11 jurors. Plaintiff's counsel stated: "I'm really not that comfortable excusing yet another juror in this case." When the court asked for suggestions on how to address the issue, plaintiff's counsel agreed it would be impractical to recess trial for three days to accommodate the juror. She also agreed it would not be good for her client if the trial did not proceed. Plaintiff's counsel did not object, and acquiesced to the court's view that the best option was to submit the case to 11 jurors.

The panel of 11 jurors found for defendant by special verdict, on both the complaint and cross-complaint. As to the conversion claim, the jury found that defendant did not "intentionally and substantially interfere with the property of Amin's Oil, Inc. by taking possession of or preventing Amin's Oil, Inc. from having access to the cash and cash returns or by refusing to return the property of Amin's Oil, Inc. after Amin's Oil demanded its return."

## 2. Attorney Fees

Defendant moved for attorney fees as a prevailing party on his overtime claim under Labor Code section 1194, subdivision (a). The motion argued that "[a]ll of the legal services conducted by counsel in this action were so entwined between the Complaint and the Cross-Complaint, that it is estimated approximately 50% of all of the legal services performed for this case were conducted for the purpose of the Cross-Complaint." The motion sought attorney fees of $71,279.60, and also sought $6,349 in expert fees as "costs."

In support of the motion, there were declarations by attorneys Remo Tabello and Michael Sundstedt, describing their respective qualifications, billing rates, the scope of work performed on the cross-complaint, and the number of hours worked. No invoices were provided, only block billing summaries. Each attorney declared that half of the time spent working on the case was related to defendant's overtime claims. Mr. Tabello estimated he spent 61.13 hours on the overtime claim, at an hourly rate of $275, and another 64 hours at a reduced rate of $150 (when he assisted Mr. Sundstedt, who acted as

7

trial counsel, at trial). Mr. Sundstedt estimated that he spent 100.20 hours prosecuting the cross-complaint, at a rate of $335 per hour, and that his associate spent 46.13 hours on the case at a rate of $245 per hour.

In opposition, plaintiff argued that only the fees in connection with defendant's cross-complaint were recoverable, and that defendant's attorneys did not spend half of their time on the overtime claims. Moreover, plaintiff argued the requested fees were unsupported by any billing summaries or other evidence to connect the fees to the overtime claims.

In reply, defendant urged that he only sought reasonable fees attributable to his cross-complaint. Mr. Sundstedt also provided a supplemental declaration, which included detailed billing summaries.

Defendant also moved for attorney and expert fees of $71,061.60 as a discovery sanction under Code of Civil Procedure section 2033.420, related to plaintiff's denial of defendant's requests for admission that he did not convert any of plaintiff's property. Defendant argued he was required to expend significant resources to establish that he did not convert plaintiff's property. He retained an expert, William Adams, to analyze plaintiff's substantial business and banking records, as well as defendant's financial records. Counsel was also required to depose plaintiff's accountant and retained expert. Mr. Tabello and Mr. Sundstedt submitted declarations setting forth the hours incurred since receiving the responses to the requests for admission, their hourly rates, background and experience. Mr. Tabello estimated he spent 37.25 hours proving the truth of the matters set forth in the requests for admission, at an hourly rate of $275, and another 64 hours at a reduced rate of $150 (when he assisted Mr. Sundstedt at trial). Mr. Sundstedt estimated that he spent 100.20 hours proving the truth of the admissions, at a rate of $335 per hour, and that his associate spent 46.13 hours on the case at a rate of $245 per hour.

In opposition to the motion, plaintiff argued it had reasonable grounds to believe it would prevail on its conversion claim at the time the denial was made, because defendant admitted making and voiding the transactions (although plaintiff acknowledged that

8

defendant denied taking any cash), because of defendant's large bank balance, and because Mr. Islam's wife witnessed the suspicious activity on the day defendant was terminated. Plaintiff also argued that the motion did not seek fees related only to the conversion claim, but for all of defendant's litigation expenses, and that the fees were unreasonable, duplicative, and unsubstantiated.

In reply, defendant argued there was no reasonable ground to believe plaintiff would prevail, and that the fees sought were reasonable. Mr. Sundstedt provided a supplemental declaration, and attached his billing invoices as well as Mr. Tabello's. The detailed invoices described the nature of the work performed, the dates when the work was performed, and the amounts billed.

Defendant also filed a memorandum of costs, seeking $37,335.32 in costs, of which $12,735 were expert fees. Plaintiff moved to tax defendant's costs, arguing defendant was not entitled to any expert fees (under either Labor Code section 1194 or Code of Civil Procedure section 2033.420), asserting expert fees are not recoverable under Code of Civil Procedure section 1033.5. Defendant opposed, arguing the expert fees were recoverable under Labor Code section 1194 and Code of Civil Procedure section 2033.420.

At the hearing on the motions, as to the sanctions sought under Code of Civil Procedure section 2033.420, and whether there was a reasonable basis for plaintiff's denials, the trial court observed that there was a credibility contest at trial between Mr. Islam and defendant. Defendant testified that Mr. Islam told him to ring up the fake transactions and "if I assume Mr. Islam knows the true state of affairs, what, if anything do I conclude about whether or not he had reasonable grounds to believe that he would prevail?" The court observed that the jury clearly found defendant to be more credible than Mr. Islam. Plaintiff's counsel argued that the findings of the jury were irrelevant to whether plaintiff believed it would prevail when it made the denials.

As to the 50-50 allocation between the Labor Code claims and the conversion claim, the trial court found that "there was substantial effort put in to proving the Labor

9

Code violations and there was substantial effort put in to . . . disproving the conversion claim."

The trial court took the motions under submission, and later awarded defendant $68,450 in attorney fees under Labor Code section 1194, finding that a "50-50 allocation" of fees was reasonable. The trial court also awarded attorney fees of $60,700 under Code of Civil Procedure section 2033.420, and expert fees of $6,349, concluding that expert fees are recoverable under section 2033.420, "even if they would not be reasonable under [s]ection 1033.5." The trial court also denied the motion to tax costs, and awarded defendant costs of $24,637.32 ("exclusive of expert fees").

Plaintiff filed a timely notice of appeal.

## DISCUSSION

### I. Attorney Fees Under Labor Code Section 1194

Plaintiff contends the trial court erroneously awarded half of defendant's total attorney fees under Labor Code section 1194, reasoning that most of defendant's litigation costs were related to plaintiff's conversion claim, and not defendant's labor claims. We disagree. Defendant's overtime claims were critical to his defense that he worked sufficient hours to accumulate his savings. Moreover, counsel averred that half of the time spent working on the case was spent on the overtime claims, and substantiated this claim by describing the work performed, and by providing detailed billing summaries. Under these circumstances, there was no abuse of discretion.

Defendant was entitled to recover reasonable attorney fees under Labor Code section 1194, subdivision (a), which provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

An attorney fee award is reviewed for abuse of discretion. Abuse of discretion occurs only when there was no reasonable basis for the trial court's action. (*Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 233.) " 'The

10

"experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion.' [Citation.]" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095; see also *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1153 [" ' "The only basis for reversal would be that the amount was so large (or so small) as to 'shock the conscience' and suggest that passion and prejudice influenced the determination. . . ." [Citation.]' [Citation.]"].)

A "lodestar" approach should be used to determine an attorney fee award. (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 448-449.) This method of calculating fees "vests the trial court with the discretion to decide which of the hours expended by the attorneys were 'reasonably spent' on the litigation. [Citation.] The lodestar amount is the product of the number of hours 'reasonably spent' and the reasonable rate." (*Id.* at p. 449; see also *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254.) A fee award must "bear some rational relationship to the amount of the substantive recovery." (*Bakkebo v. Municipal Court* (1981) 124 Cal.App.3d 229, 236.) If a fee request appears unreasonably inflated, the trial court may reduce the award or deny it altogether. (*Meister v. Regents of University of California*, at p. 448.)

In ruling on a motion for attorney fees, the trial court is not required to issue a statement of decision addressing disputed legal or factual issues. (*Rebney v. Wells Fargo Bank* (1991) 232 Cal.App.3d 1344, 1348-1349.) In fact, "[n]o specific findings reflecting the court's calculations [are] required. . . . On appeal we infer all findings in favor of the prevailing parties." (*Wershba v. Apple Computer, Inc., supra,* 91 Cal.App.4th at p. 254, citation omitted.)

The record shows the fee award was determined according to a lodestar approach. The trial court found that the overtime claim was half of the case, and therefore, the attorneys' allocation of 50 percent of their total hours to the overtime cause of action was reasonable. The award of $68,450 represents approximately 270 hours of attorney work

11

at a blended rate of a little over $250 per hour. We disagree with plaintiff's claim on appeal that the fees are duplicative because there were three attorneys, finding the total number of attorney hours was quite modest to prepare for and try a case for 13 days. We also find unpersuasive plaintiff's argument that it was unnecessary for defense counsel to spend time reviewing records that defendant's expert also reviewed. It would be unreasonable for a lawyer to call an expert witness to testify to opinions based on documents the lawyer had not personally reviewed.

We also disagree with plaintiff's contention that defendant's counsel achieved minimal results. Specifically, plaintiff argues that a total fee award of over $129,000 was out of proportion to the judgment of over $16,000 in defendant's favor. This assessment mischaracterizes the results achieved. Not only did defendant obtain a judgment of over $16,000, he avoided hundreds of thousands of dollars in damages sought by plaintiff's complaint.

The trial court was well within its discretion in awarding attorney fees based on the product of the number of hours reasonably spent in litigating defendant's overtime claim and a reasonable blended hourly rate.

## II.     Expenses Under Code of Civil Procedure Section 2033.420

Plaintiff contends it had reasonable grounds to believe it would prevail on the matters set forth in the requests for admission at trial, and therefore reasons that the fee award under Code of Civil Procedure section 2033.420  must be reversed. Alternatively, plaintiff claims the fees were excessive, and that expert fees are not recoverable. Plaintiff's other arguments were waived by plaintiff's failure to assert them in the trial court. (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486.)  To the extent we have considered them, we find they are without merit.[1]

---

[1]     For example, plaintiff contends the requests for admission were not of substantial importance, and that defendant did not prove the truth of the matters set forth in the requests for admission. Clearly, the requests for admission were of substantial importance, as they asked whether defendant converted any of plaintiff's property, which was *the* disputed issue at trial. As the jury found defendant did not convert plaintiff's property, defendant proved the truth of the matters set forth in the requests for admission.

12

Code of Civil Procedure section 2033.420 provides that if a party fails to admit the truth of any matter when requested to do so, and the party seeking the admission later proves the truth of that matter, the party seeking the admission may move the court for an order requiring the responding party to pay the reasonable expenses incurred in proving the matter, including reasonable attorney fees. (*Id.*, subd. (a).) Requests for admission are different from other forms of discovery. Rather than seeking to uncover information, they seek to eliminate the need for proof. (*Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 864.) The primary purpose of requests for admission is to expedite trial. (*Barnett v. Penske Truck Leasing* (2001) 90 Cal.App.4th 494, 499; *Murillo v. Superior Court* (2006) 143 Cal.App.4th 730, 737.) Cost of proof sanctions, as the trial court awarded here, serve that purpose. (*Stull,* at p. 865.)

The court will not award costs of proof if the party who denied the request for admission believed in good faith it would prevail on the issue at trial. (Code Civ. Proc., § 2033.420, subd. (b)(3); *Miller v. American Greetings Corp.* (2008) 161 Cal.App.4th 1055, 1066, citing *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 511 (*Brooks*).) "[I]t is [not] enough for the party making the denial to 'hotly contest' the issue. . . . [T]here must be some reasonable basis for contesting the issue in question before sanctions can be avoided." (*Brooks*, *supra*, at p. 511.) The determination of whether "there were no good reasons for the denial," and the amount of expenses to be awarded, are within the sound discretion of the trial court. (*Id.* at p. 508; see also *Miller*, at p. 1066 [we review a court's fee award for abuse of discretion].)

The trial court did not abuse its discretion in concluding there was no good reason for plaintiff to deny the truth of the matter that defendant never converted any of plaintiff's property. Plaintiff offered substantial evidence that Mr. Islam directed him to make phony credit card transactions in order to misrepresent the gas station's revenue so as to command an inflated price for the sale of the business. The jury's verdict demonstrates they believed defendant's evidence and disbelieved plaintiff's evidence. The trial court apparently agreed with the jury's credibility determinations. Obviously, Mr. Islam could not believe in good faith that defendant stole money from the cash

13

register since he must have known that he had told defendant to make the false credit card transactions to serve his own dishonest purposes.

For the same reasons discussed *ante*, we conclude that the trial court did not abuse its discretion in allocating and awarding nearly half of defendant's attorney fees under Code of Civil Procedure section 2033.420. The claimed fees were reasonably incurred to establish that defendant did not convert plaintiff's property.[2] If plaintiff had not denied the requests for admission, defendant would not have had to defend against plaintiff's conversion claim. The award of $60,700 represents approximately 240 hours of attorney work at a blended rate of a little more than $250 per hour. These fees are patently reasonable under the circumstances.[3]

Plaintiff also argues that expert fees are not recoverable under Code of Civil Procedure section 2033.420, because defendant's expert was not ordered by the court, and section 2033.420 does not *expressly* permit recovery of expert fees. Plaintiff invites us to join in its leap of logic derived from unrelated statutes providing for the recovery of costs by a prevailing party. The statutes providing for the recovery of costs by a prevailing party are unrelated to, and serve different purposes than, the discovery statute permitting an award of fees as a sanction for a denial of a request for admission that is not made in good faith. Sections 1032 and 1033.5 allow the prevailing party to recover fees only for an expert ordered by the court, "except when expressly authorized by law" (§ 1033.5, subd. (b)(1)). Plaintiff contends that, based on these unrelated statutes, we should find expert fees may not be recovered as a discovery sanction under section 2033.420, because the court did not order the defense expert, and section 2033.420 does not expressly authorize recovery of expert fees.

---

**2**      Contrary to plaintiff's claim on appeal, a careful review of the declarations and bills submitted in support of the motion reveals that none of the recovered fees were incurred before the denials were made.

14

We find no reason to engraft upon Code of Civil Procedure section 2033.420 the limitations of the prevailing party cost recovery statutes. Defendant did not seek his expert fees as a prevailing party under section 1033.5. Defendant sought his fees as a discovery sanction under section 2033.420, which does not limit its application to prevailing parties, and therefore does not implicate section 1033.5. (See *Brooks*, *supra*, 179 Cal.App.3d at p. 509, fn. 5 [even a nonprevailing party can recover expenses under § 2033.42 (discussing former § 2034, subd. (c))].) It is clear that expert fees were incurred in order to establish the truth of the matters set forth in the requests for admissions (e.g., that defendant did not convert plaintiff's property). Moreover, in this case, the defense expert's fees were a "reasonable expense" under section 2033.420. (*Id.*, subd. (a).)

## III.  Evidentiary and Instructional Rulings

Plaintiff also complains that it was prejudiced by improper evidentiary and instructional rulings, such as the admission of summaries by defendant's expert, Mr. Adams, that were not disclosed before trial on defendant's exhibit list, and therefore constituted an unfair surprise. Also, plaintiff argues the summaries improperly relied on defendant's tax returns, which plaintiff had been precluded from discovering. Moreover, the summaries relied on "evidence" that had not been established at trial, such as other sources of money that defendant received. Plaintiff contends the trial court did not instruct the jury that some of the facts on which the expert's opinion were based had not been proven.

At trial, defendant explained that the summaries were for "demonstrative purposes" only, to help explain to the jury how defendant had accumulated significant savings. The use of summaries would save significant time. Moreover, the summaries were derived from documents produced in discovery, and had been given to plaintiff's

---

**3**    It appears that plaintiff also argues that the trial court erroneously awarded expert fees under Labor Code section 1194. Plaintiff is mistaken. As the amended judgment makes clear, only a portion of the expert fees incurred were awarded, and they were awarded under Code of Civil Procedure section 2033.420.

15

counsel the previous week, so there was no unfair surprise. The trial court determined that defendant's expert could lay a foundation for the summaries, and could explain what he looked at in preparing them.

We find that plaintiff's claims of error are not meritorious on appeal, because plaintiff has not attempted to show any prejudice. The trial court's evidentiary rulings are reviewed for an abuse of discretion. (*Thompson v. County of Los Angeles* (2006) 142 Cal.App.4th 154, 168.) An erroneous evidentiary ruling will warrant reversal only if it "resulted in a manifest miscarriage of justice." (*Ibid.*; see also Cal. Const., art. VI, § 13 [requiring a showing of a "miscarriage of justice" to warrant reversal of judgment due to trial court error]; *Cassim v. Allstate Ins. Co*. (2004) 33 Cal.4th 780, 800 [miscarriage of justice means there is a reasonable probability of a more favorable result to the appealing party in the absence of the error].) Instructional error also requires that an appellant establish prejudice. (See *Green v. State of California* (2007) 42 Cal.4th 254, 267 [instructional error in a civil case is prejudicial where it prejudicially affected the verdict].)

Here, plaintiff has not fairly summarized the evidence adduced at trial with citations to the record, and has not even attempted to explain how any of the above "errors" had an impact on the outcome of the trial. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [failure to fairly summarize the evidence waives alleged error].) As the trial court aptly noted, this case was a credibility contest between Mr. Islam and defendant. The jury clearly found defendant to be a more credible witness, and it is hard to imagine that summaries by defendant's expert somehow tipped the scales in defendant's favor.

## IV. Jury

Lastly, plaintiff complains that it did not "clearly agree" to a jury of less than 12 members. "In civil causes the jury shall consist of 12 persons or a lesser number agreed on by the parties in open court." (Cal. Const., art. I, § 16.) The record demonstrates that plaintiff's counsel assented to the jury of 11. Although she expressed discomfort, in the end, she agreed, because as a practical matter there was no better

16

alternative to excusing the 12th juror.

## DISPOSITION

The judgment is affirmed.  Defendant is awarded his costs on appeal.


GRIMES, J.

We concur:


BIGELOW, P. J.


FLIER, J.

17